JAMES M. BRADEN (SBN 102397)
LAW OFFICES OF JAMES M. BRADEN
601 MONTGOMERY STREET, SUITE 315
SAN FRANCISCO, CA  94111

TELEPHONE: (415) 398-6865
FACSIMILE:  (415) 788-5605
EMAIL:        braden@sf-lawyer.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| R. MICHAEL WILLIAMS, an individual, and IMMUNOGENETICS.COM, INC., a Delaware corporation<br><br>                  Plaintiffs,<br><br>v.<br><br>BERNADETTE BROCCOLO, an individual,<br><br>                  Defendants. | Case No. 21-cv-04731 - SBA<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR LEGAL MALPRACTICE; BREACH OF FIDUCIARY DUTY; AND FRAUD AND DECEIT**<br><br>**FILED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(1)(B)** |

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE,**
**FRAUD AND DECEIT, AND BREACH OF FIDUCIARY DUTY**

Plaintiffs R. Michael Williams, a medical doctor, and Immunogenetics.com, Inc., a

Delaware corporation, by and through its counsel, alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is founded upon 28 U.S.C. Section 1332(a)(2),

pertaining to diversity of citizenship, because the amount in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs, and because Plaintiffs are citizens of California

or Delaware, and Defendant is a citizen of Illinois.

2.      Venue is proper in this Court under 28 U.S.C. §§ 1391(a) on one or more of the

following bases: (A) A substantial part of the events or omissions giving rise to Plaintiffs'

claims occurred, or a substantial part of the property that is the subject of this action is situated,

in this District (28 U.S.C. § 1391(a)(2)); or (B) The defendant is subject to personal jurisdiction

in this District at the time this action is brought  because her contacts here would be sufficient to

subject her to personal jurisdiction if this District were a separate State. (28 U.S.C. § 1391(a)(3)

and 1391(c)).

3,      Plaintiffs invoke this Court's jurisdiction pursuant to Rule 18(a) of the Federal

Rules of Civil Procedure and 28 U.S.C. § 1367 to hear and adjudicate claims arising out of the

facts set forth below that violate rights and duties established by the laws of the State of

California.

## PARTIES

4.      Plaintiff R. Michael Williams ("Williams" or "Plaintiff" herein) is now, and at all

times material herein was, a citizen and resident of the State of California, whose home is in

Dublin, California, which is in Alameda County, which is in the Northern District of California.

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE,**
**FRAUD AND DECEIT, AND BREACH OF FIDUCIARY DUTY**

5.      Plaintiff Immunogenetics.com, Inc. (the "Company") is a Delaware corporation with its principal place of business in Dublin, California, which is in Alameda County, which is in the Northern District of California.

6.      Defendant Bernadette Broccolo ("Broccolo" or "Defendant" herein) is an individual who is, and at all times material herein was, an attorney with partner status at the law firm McDermott, Will & Emery ("MWE"), at its Chicago, Illinois office, and who is a citizen and resident of the State of Illinois.

## FACT ALLEGATIONS

7.      Broccolo and Williams had an attorney-client relationship that began in the 1990's, under which many legal matters had been dealt with.

8.      As of August 2019, Williams had developed some valuable Intellectual Property ("IP") which he believed could and should qualify for multiple United States Patents.  He asked Broccolo to serve as his attorney to set up a new corporation that would own and develop the IP, including any Patents.   Williams asked Broccolo to do this because he had personal trust and confidence in her based on their many years of having worked together.  Williams knew that Broccolo was a partner at the MWE law firm.  But Williams had ho interest in hiring MWE apart from hiring Broccolo.

9.      Because the corporation of course had not yet been established when Williams approached Broccolo, the only actual or even possible client at that time was Williams the individual.   Broccolo fully understood that Williams was hiring her, not MWE, as his primary attorney who would be directly and personally responsible for proper handling of his new corporation and the related IP, including Patents on that IP.

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE,**
**FRAUD AND DECEIT, AND BREACH OF FIDUCIARY DUTY**

10.     To reflect and implement this arrangement, Broccolo prepared a letter dated August 14, 2019, attached hereto,   This letter is signed with first name only in her individual capacity by Broccolo, not with an entity signature block to indicate that she was signing on behalf of MWE.   Although the letter is written on MWE letterhead paper, it clearly was, and Williams certainly understood it to be, a personal contract for attorney services between him and Broccolo.   This was reflected in Broccolo's saying on page one of the letter that she would have "overall responsibility for the engagement".

11.     Broccolo's letter says that she will provide legal eservices in forming and developing the new Company, and in "establishing and protecting intellectual property rights in current and anticipated discoveries and inventions".   Although the word "patent" is not specifically used, the described mission regarding IP rights necessarily includes, inter alia, work on Patents.   Williams certainly understood it that way.    Broccolo's letter goes on to say that she would ask other attorneys at MWE to provide specific IP expertise, but the context is clear that Broccolo was assuring Williams that she would, as befitted heir long relationship, have primary and direct personal responsibility for making sure that all IP work, including Patent work, got done capably and timely.

12.     Williams made clear that his priority interest was in protection of the IP, particularly by Patents, and that formation of the new Company was a distinctly secondary concern.  Acting on that understanding, Williams two days later, on August 16, 2019, gave Broccolo information about two discoveries or inventions on which he wanted her to arrange for Patent protection.   The three items may be described in lay language as follows:

A.     Creation of a monoclonal antibody that was soluble in saline that has the target specificity of antigen/epitope present on various forms of cancer.

---

4

B.      Creation of a new monoclonal antibody, a cytolytic antibody, which goes beyond the natural antibody.

13.     The information Williams gave Broccolo included many pages of information about these two items, including documents that showed dates of initial publication  in May 2019.   Williams and Broccolo discussed and Broccolo understood that a Patent Application was required to be filed not more than one year after such date of initial publication.  Broccolo assured Williams that the Patent applications would be timely filed before by not later than May 2020.

14.     Broccolo assigned her partner Roger Quan, an IP expert, to prepare the Patent Applications.  Broccolo herself had no specific patent expertise and did not claim to have any. She made clear to Williams that her job was to make sure that the right people who did have the expertise got the patent work done.

15.     Broccolo thereafter told Williams that work was proceeding on the patent applications.   On October 17, 2019, she gave Williams an unusually detailed report and assurances of this.  But she on several other occasions during autumn 2019 and winter 2020 gave Williams general assurances of this.

16.     Obtaining the patents was the primary mission for Broccolo and those she sked to assist her.   A secondarily important mission was the establishment of the corporation, which became co-plaintiff herein Immunogentics.com.  Williams rightly regarded this as routine and basic corporate law work that Broccolo would quickly and easily get done.

17.     But four months later, in early December 2019, when Williams went to the bank to take possession of the new Company's account, which he was sure existed by then, the bank informed him that no such corporation as Immunogenetics.com was registered with the

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE,**
**FRAUD AND DECEIT, AND BREACH OF FIDUCIARY DUTY**

California Secretary of State.   Williams was amazed and distressed to learn this.  He asked Broccolo to explain.

18.    Broccolo never did explain,   But Williams' inquiry apparently caused her to panic, so she rushed to remedy her having neglected for four months to do anything about setting up the new company.  Broccolo scrambled to get it done by filing on December 16, 2019 for incorporation in Delaware, and filing four days later, on December 20, 2019, with the California Secretary of State as a foreign corporation doing business in California.

19.    Williams became increasingly concerned from December 2019 through April 2020 about the looming expiration of the one-year limitation period for the two patent applications.   But Williams refrained from pestering Broccolo because he fully trusted her, again based on their many years long relationship, to be supervising the project to a timely conclusion.

20.    However, by May 2020, Williams became sufficiently concerned at having received no communications from Broccolo assuring him of good progress that he phoned to ask her about status.   Broccolo said at first that she did not know and would have to check and get back to Williams.   She then called back to say Roger Quan, whom she had assigned to the patent task, was no longer working for her because he was no longer at MWE.   Broccolo said she would investigate further and get back to Williams.

21    Broccolo never did circle back to Williams with further information about the progress of the patent work.  Instead, Broccolo on June 14, 2020, sent Williams a letter dated June 12, 2020 that purported to be a new legal representation agreement, which is attached hereto.   As was the previous letter in August 2019, the letter was signed by Broccolo in her individual capacity, indeed with her first name only, and without a company or entity indicator in

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE,**
**FRAUD AND DECEIT, AND BREACH OF FIDUCIARY DUTY**

the signature bloc,  Broccolo also said, as she did before, that she would have "overall responsibility" for the legal work.

22,      The letter purported to represent only the Company, i.e. Immunogenetics.com, and specifically excluded representation of Williams personally, as well as any other individuals such as Williams' colleague Dr. Edmond Yunis.

23,      The letter gave the appearance of initiating a brand-new patent application process on behalf of the Company, and named individuals in MWE's Silicon Valley (Northern District of California) office who supposedly would work on it.   The letter contains no indication or acknowledgment that Broccolo had been hired 10 months earlier, in August 2019, to file patent applications on behalf of Williams and the Company that Broccolo would be creating.   The letter contains no indication that work had been done in the ensuing 10 months on those patents.

24.      The letter thus creates the impression that this patent work would now be done for the first time and that Broccolo never previously had any responsibility for doing patent work. This was an outright false representation.

25.      When Williams sent Broccolo an email asking why he needed to sign a new retainer for work that Broccolo had been hired to do nearly a year earlier, Broccolo sent a reply falsely stating that the patent work was a new matter and that every new matter requires a new retainer agreement.   Broccolo was in a state of panic after realizing that she had negligently blown the one-year limitations period for filing the patent applications.  In a desperate attempt to cover up her blunder, she created a false and fraudulent new retainer agreement.

26.      Williams did sign the new retainer agreement because Broccolo pushed very hard for him to do so, and because Williams did not immediately appreciate the incredible fraud and

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE,**
**FRAUD AND DECEIT, AND BREACH OF FIDUCIARY DUTY**

deceit that his longtime attorney and friend Broccolo was willing to perpetrate to cover up her negligence in allowing his patent rights to expire by the passage of the one year time limit.

## FIRST CLAIM FOR RELIF: LEGAL MALPRACTICE

27.     Plaintiffs incorporate by reference and reallege herein Paragraphs 1 through 26.

28.     At all times relevant hereto, Defendant Broccolo owed a duty of care to Plaintiffs to represent them in legal advice, communications, billing, and guidance in accordance with relevant legal standards of care within the practice of law.

29.     Defendant Broccolo breached the relevant duty of care by failing to adequately represent Plaintiffs in providing competent legal advice, full and accurate communications, accurate billing, and legal advice in accordance with relevant legal standards within the practice of law. This breach constitutes Professional Negligence or Legal Malpractice.

30.     Defendant Broccolo's breach caused substantial damage to Williams in an amount to be determined according to law.

## SECOND CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTIES

31.     Plaintiffs incorporate by reference and reallege herein Paragraphs 1 through 26.

32.     Defendant Broccolo, as attorney for Plaintiffs, owed Plaintiffs a fiduciary duty to preserve and protect Plaintiffs' interests, rights, and opportunities.

33.     Broccolo, by virtue of her actions and failures to act, breached said fiduciary duties.

34.     As an actual and proximate result of Broccolo's breach of fiduciary duties, Broccolo  caused substantial damage to Williams, in an amount to be determined according to law.

35.     In breaching said fiduciary duties, Broccolo acted with oppression, fraud, or

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE,
FRAUD AND DECEIT, AND BREACH OF FIDUCIARY DUTY**

malice, thereby entitling Williams to an award of punitive damages..

## THIRD CLAIM FOR RELIEF – FRAUD AND DECEIT

36**.**     Plaintiffs incorporate by reference and reallege herein Paragraphs 1 through 26.

37.     Broccolo told Williams that a new retainer agreement was needed in June 2020 because work on Williams' patent applications was a new matter, implicitly not covered by any previous agreement and on which no work had been done, and all new matters require a new retainer agreement.

38.     Broccolo's representations were false.  In fact, the patent applications were not a new matter at all, but had already been the subject of the August 2019 retainer agreement, which Broccolo assured Williams more than once had resulted in patent application work being done.

39.     Broccolo knew the representations were false when she made them.  Any defense by Broccolo that the matter was new because the new retainer agreement was presented as being on behalf of only Immunogenetics.com as the client, and excluded Williams individually, is negated by the fact the August 2019 agreement already covered both Williams and the company, which became Immnogenetics.com, that Broccolo agreed therein to create.

40.     Broccolo's false representations induced Williams to sign the bogus new retainer agreement.  Broccolo's corrupt motivation was to claim that by signing the bogus new agreement, Williams was waiving and releasing any claim for Malpractice against Broccolo arising from any patent work promised under the August 2019 agreement, including any claim relating to expiration of the one-year limitations period.

41.     As an actual and proximate result of Broccolo's fraud and deceit, Broccolo caused substantial damage to Williams, in an amount to be determined according to law.

42.     In committing that fraud and deceit, Broccolo acted with oppression, fraud, or

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE,**
**FRAUD AND DECEIT, AND BREACH OF FIDUCIARY DUTY**

malice, thereby entitling Williams to an award of punitive damages.

## **PRAYER FOR RELIEF:**

1. Compensatory damages in an amount to be proven at trial;

2. For punitive and exemplary damages in an amount to be proven at trial; and

3. For such further and other relief as this Court deems just and proper.

Dated: November 9, 2021         LAW OFFICES OF JAMES M. BRADEN

By: ____/s/ James Braden_____

James Braden
Attorney for Plaintiffs


## **PLAINTIFFS DEMAND A TRIAL BY JURY**

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE,
FRAUD AND DECEIT, AND BREACH OF FIDUCIARY DUTY**



Boston  Brussels  Chicago  Dallas  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Bernadette M. Broccolo
Attorney at Law
bbroccolo@mwe.com
+1 312 984 6911

August 14, 2019

R. Michael Williams, M.D. PhD.
5799 Turnberry Drive
Dublin, CA  95468

Re:     Engagement – Immunogenetics

Dear Dr. Williams:

Thank you for selecting McDermott Will & Emery LLP ("McDermott") to provide legal services to you and, following its formation, to an entity anticipated to be formed by you under the name Immunogenetics (the "Company"). McDermott is a limited liability partnership registered in the State of Illinois.  I am setting forth the terms of our legal representation in this letter and in the Additional Terms of Engagement that accompany this letter ("Additional Terms"). Our attorney-client relationship will commence when McDermott and you have agreed to the material terms of our engagement and McDermott has received the initial retainer described below.

We will provide legal advice in connection with (1) the formation and capitalization of the Company and other general corporate matters, (2) establishing and protecting intellectual property rights in current and anticipated discoveries and inventions, and (3) such other legal and regulatory matters on which you or the Company may seek our advice from time to time.

Mark Mihanovic and I will be the attorneys principally responsible for the legal services provided by McDermott to you and the Company.  Mark will serve as your principal contact on a day-to-day basis. I will provide advice on healthcare-specific legal and regulatory matters. As the engagement partner, I will also have overall responsibility for the engagement and be available to you at any time to discuss any aspect of the engagement. We will involve mid- to senior-level corporate associates such as Diana Douglas and Aroma Sharma (both in the Silicon Valley office and have worked with Mark) who have experience in similar engagements. As circumstances warrant, we may need to involve other attorneys with necessary expertise (e.g., intellectual property and certain healthcare regulatory issues) as well as mid-level and junior associates and non-attorney professionals who are competent to perform certain tasks in a timely and cost-effective manner.

Our fees are based primarily on the time spent by and the hourly billing rates of each professional working on a matter, which rates may vary from one assignment to another based on considerations such as but not limited to the complexity and size of, and the time constraints imposed by circumstances relating to, such matter, as well as the skill and experience required to perform the services provided in connection with such matter. Mark Mihanovic's time will initially be billed at $1,120 per hour and mine at $1,105. The hourly rate for mid- to senior-level associates such as Diana Douglas and Aroma Sharma

R. Michael Williams, M.D. PhD
August 14, 2019
Page 2

are in the range of approximately $670 and $720. Our rates are reviewed at least annually and may be increased during the course of our representation.  In addition to our fees, we will bill for items of expense which we incur on behalf of you or the Company.  Initially, you will be responsible for payment of our fees and expenses. We understand that, after the Company is formed, the Company will sign a copy of this engagement letter agreeing to all of its terms and  become our client hereunder for all purposes (including in relation to  payment of our Firm's fees and expenses).

As we discussed, McDermott initially requires a retainer deposit of $5000 to be held by McDermott during the pendency of the attorney-client relationship described herein.  Should the nature of this matter or the amount of work change, we may deem it necessary to require an additional retainer beyond such amount, in which case we will promptly consult with you or the Company concerning the scope of our services and any additional retainer required.  The retainer deposit contemplated hereby, and any similar advances in the future, will be deposited in an interest-bearing account and will earn interest on your behalf.  We intend to submit invoices monthly, which are payable upon receipt, and we will apply the retainer to credit legal fees and expenses incurred in the last month for which we perform services hereunder and earlier at our discretion.

## Conflicts of Interest

In order to avoid misunderstandings concerning potential conflicts of interest, it is our policy to clarify the identity of our clients and the circumstances under which we may represent other clients with interests which are or may be adverse to you or the Company. Our representation extends only to you (initially) and then to the Company following its formation. It does not extend to anyone else, including but not limited to any parents, subsidiaries, employees, officers, directors, shareholders, partners, members, entities in which you own an interest (even a substantial interest), or to any beneficiaries or other affiliates.

McDermott represents, and in the future will represent, many other clients. During the time we are working for you and then for the Company, one or more existing or future clients may ask McDermott to represent them in an actual or potential transaction or contested matter, including litigation or other dispute resolution proceedings, adverse to your or the Company's interests. By entering into this engagement,  you and the Company each agrees that McDermott can accept all such representations, even if the other client's interests are or may become directly adverse to your or the Company's interests, unless the matter is substantially related to a matter in which we are representing you or the Company, or will require disclosure of your or the Company's confidential information. (All such representations are referred to as "Permitted Representations".)  You and the Company each waives all actual and potential conflicts of interest that might exist because of any Permitted Representations undertaken by McDermott, and neither you nor the Company will assert that any engagement of McDermott for  is a basis to challenge or to disqualify McDermott from undertaking or continuing any Permitted Representation.

## Miscellaneous

It is important that all information provided to us is complete, accurate and up to date so that we can represent your interests fully. Accordingly, please ensure that we are notified of any changes or variations to that information which may arise after the date it is provided to us, as well as any new circumstances which might be relevant to the work we are undertaking for you.

R. Michael Williams, M.D. PhD
August 14, 2019
Page 3

Unless we are otherwise instructed by you in writing at or prior to the completion of this matter, we will, after a reasonable period of time has passed, at our discretion, dispose of documents (hard copies, electronic and any other media) and other materials that remain in our possession relating to a matter for which our services have been completed or terminated.

When we complete the services we have been retained us to perform, our attorney-client relationship will be terminated. If either you or the Company later retains us to perform further or additional services, our attorney-client relationship will be revived subject to these terms of engagement unless we mutually agree in writing to change the terms at that time.

You have the right to consult with other counsel concerning the terms of this engagement letter. By executing this engagement letter, each of you and the Company is confirming that you and it understands and accepts all of the terms set forth in this letter and in the Additional Terms and that each of you and it has been signed this letter voluntarily and with the benefit of the information necessary to make a fully informed decision to agree to these terms. Each of you and the Company intends for its consent to be effective and fully enforceable and to be relied upon by McDermott in accepting the representation. These terms may not be modified unilaterally and any amendment or modification of these terms will be effective only upon execution of a writing signed by you or by a person authorized to approve such changes for the Company if it is the client at the time, and by a person authorized to sign on McDermott's behalf.

*   *   *

If you have questions concerning any of the information presented in this letter or the Additional Terms, or should you have a concern or question at any time during our engagement on any matters, please do not hesitate to call me.

If the letter and Additional Terms are acceptable, please sign and date this letter in the space provided below, complete the enclosed Form W-9, return the signed letter and W-9 by email and deliver the retainer check either in person at our meeting on Friday, August 16 or by regular mail. Please note that your request that McDermott proceed, or your acquiescence in McDermott proceeding, will constitute your full acceptance of the terms set forth herein and in the attached.

Thank you again for the opportunity to be of service to you on this important matter. We look forward to working with you and the Company!

Sincerely,

*Bernadette*

Bernadette M. Broccolo

**AGREED AND ACCEPTED ON BEHALF OF UNITYPOINT HEALTH**

**By _____          _____**
    **R. Michael Williams, M.D., PhD                              Date**

R. Michael Williams, M.D. PhD
August 14, 2019
Page 4

# ADDITIONAL TERMS

*This document sets forth McDermott Will & Emery LLP's additional standard terms of engagement for providing legal services. These terms are an integral part of our agreement with you. You should review this document carefully and retain it for your files. If you have any questions, please contact us promptly.*

**OUR SERVICES TO YOU** ~ In our engagement letter with you, we specify the matter in which we will be representing you. It is important that you have a clear understanding of the legal services we will provide. If at any time you have questions regarding the scope of our services, please communicate with your principal contact at the Firm.

We will represent you zealously and act on your behalf to the best of our ability. Whenever we provide you with an expression regarding the potential outcome of your matter, we will use our best professional judgment. However, we cannot guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is limited by our knowledge of the facts and based on the law at the time. It is also subject to any unknown or uncertain factors or conditions beyond our control.

**WHO IS OUR CLIENT?** ~ It is our policy to represent only the person or entity identified in our engagement letter. Unless specifically stated to the contrary in that letter, our representation of you does not extend to any of your affiliates.

For example, if you are a corporation, our representation does not include any of your parents, subsidiaries, employees, officers, directors, shareholders, or any entities in which you own an interest (even a substantial interest). If you are a partnership, our representation does not extend to the individual partners of the partnership. If you are a trade association, our representation excludes members of the trade association. If you are an individual, our representation does not include your spouse, siblings, or other family members, successors in interest, or any entities in which you own an interest (even a substantial interest). If you are a trustee or other fiduciary, our representation does not include beneficiaries or other persons to whom you owe a duty.

When we deal with a representative or agent of an entity, we represent only the entity and not the representative or agent.

The advice and communications which we render on your behalf are not intended to be disseminated to or relied upon by any other parties without our written consent. We sometimes include a specific disclaimer in correspondence or other work product to this effect, but the absence of such a disclaimer does not create an exception or otherwise entitle others to rely on our work or advice.

**FEE ESTIMATES** ~ Clients frequently ask us to estimate the total fees and other charges they are likely to incur in connection with a particular matter. We are pleased to respond to such requests whenever possible with an estimate based on our professional judgment. This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation. The ultimate cost frequently is more or less than the amount estimated.

R. Michael Williams, M.D. PhD
August 14, 2019
Page 5

**OTHER CHARGES** ~ As an adjunct to providing legal services, we may incur and pay a variety of charges on your behalf or charge for certain ancillary support services.  When we incur such charges on your behalf or charge for such ancillary support services, we will include them in our billing statements. These charges may include, among other things, telephone, messenger, courier, express delivery services, facsimile communications (which typically include a per page charge in addition to the cost of the telephone usage), document printing, reproduction, scanning and imaging, data storage and processing (which typically include per gigabyte charges based on the volume of data), filing fees, deposition and transcript fees, witness fees, travel expenses, computer research, and charges by outside experts and consultants. Certain of these services, particularly those that involve significant technology and/or support services such as imaging and storing electronic data and documents and the use of specialized software for legal research and data processing, may be provided by McDermott at a profit.

It is our general policy to arrange for outside providers of services (such as the fees of outside consultants, expert witnesses and court reporters) to bill you directly.  You agree to pay those bills promptly and to provide us notice that such payment has been made.

**BILLING ARRANGEMENTS, TERMS OF PAYMENT AND RETAINERS** ~ We will bill you on a regular basis—normally, each month—for both fees and other charges.  You agree to make payment upon receipt of our statement.

Sometimes we ask for an advance retainer which will be credited towards your legal fees and expenses on a monthly basis, unless we agree to a different arrangement. If the retainer proves insufficient to cover current fees and other charges on a regular basis, we may ask you to replenish or increase it, and you agree to do so if asked.

Should your account become delinquent and satisfactory payment terms are not arranged, we may withdraw, or seek to withdraw, from the representation consistent with the applicable rules and pursue collection of the amounts owed.  You will remain responsible for payment of our legal fees rendered and charges incurred prior to such withdrawal.

We look to you, the client, for payment regardless of whether you are insured to cover the particular risk or have the right to be reimbursed from someone else.  You are responsible to pay us in accordance with the terms agreed to in this engagement, even if you engage us to collect or seek reimbursement from an insurer or other third party pursuant to contracts, statutes or insurance policies.

**TERMINATION** ~  You may terminate our representation at any time, with or without cause, by notifying us, and subject to court approval when required for matters in litigation.  We will return your papers and other property to you promptly upon receipt of your request for those materials unless they are subject to a lien under applicable law.  We will retain our own files pertaining to the matter or case, including our drafts, notes, internal memos, and work product.  Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

We have the right to withdraw from our representation of you if, among other things, you fail to honor the terms of our engagement letter and/or the Additional Terms, you fail to make payment of any of our statements in a timely manner, you fail to cooperate or to follow our advice on a material matter, or any

R. Michael Williams, M.D. PhD
August 14, 2019
Page 6

fact or circumstance occurs that would, in our view, render our continuing representation unlawful or unethical, or we determine that we are otherwise permitted under applicable law and rules to withdraw from the representation.  If we elect to withdraw, you will take all steps necessary to free us of any obligation to perform further services, including the execution of any documents necessary to complete our withdrawal.  Notwithstanding such termination, you will remain obligated to pay us for all services provided and to reimburse us for all costs and expenses paid or incurred on your behalf, including those required for the orderly transition of the engagement.

Our representation of you will be considered terminated at the earlier of (a) your termination of our representation and the completion of any work that may be required incidental to withdrawal from an ongoing matter, such as work that is appropriate to accomplish an orderly transition to other counsel, work required to obtain permission to withdraw from a court or other tribunal, and work that is required to be performed prior to the time that such permission is granted, (b) our withdrawal from our representation of you or (c) the completion of our work for you. In addition, in the event there has been no work performed by us on your behalf for six consecutive months, and no more work is contemplated, our attorney-client relationship will have been terminated.

**PRIVILEGE** ~ Our communications to and from you, including billing statements, may include attorney client privileged information or attorney work product. You should take reasonable steps to protect them from disclosure to third parties so as to maintain those privileges and protections.

**MCDERMOTT'S PRIVILEGE** ~ From time to time, issues may arise that raise questions as to our duties to you.  We believe that it is in our clients' interest, as well as McDermott's interest, that in the event legal ethics or related issues arise during a representation, we receive experienced legal advice concerning our obligations. Accordingly, you agree that if we determine in our sole discretion during the course of the representation that it is necessary or appropriate to consult with McDermott lawyers designated to render legal advice to McDermott and its lawyers or to consult with outside lawyers, we have your consent to do so and any communications among lawyers working on the matter and McDermott lawyers or outside lawyers designated to render legal advice to McDermott and its lawyers will be privileged.

**SECURE COMMUNICATIONS** ~ Our email server is configured to encrypt emails if your email system supports it. We recommend that encryption be used to protect communications with us that include confidential information.  You should discuss with your principal contact at the Firm any special measures that you require regarding email encryption. In addition, the Firm has available solutions to facilitate our collaboration and document sharing with you that we can discuss with you when appropriate. If you prefer to use a solution other than those provided by the Firm, we recommend that you carefully assess the data security offered by that solution.  We discourage you from using text, instant messaging or similar programs to communicate with us. These forms of communication may not be encrypted and may be vulnerable to interception.

**ANTI-BRIBERY AND ANTI-CORRUPTION** ~ We do not engage in bribery or corruption of any kind, and do not tolerate bribery or corruption by others to further the goals and objectives of our representations. We reserve the right to terminate our engagement if we learn of such improper conduct.

R. Michael Williams, M.D. PhD
August 14, 2019
Page 7

**EUROPEAN UNION DATA PROTECTION** ~ In providing legal services in the United
States, we may receive from you data which relates to an identified or identifiable individual in the
European Union ("Personal Data").  To the extent applicable to us, we will comply with the provisions of
the General Data Protection Regulation (EU) 2016/679 as well as any implementing, amending or
supplemental regulation under Member State data protection laws ("Data Protection Laws") as an
independent data controller (i.e. as between you and us, we will each separately be responsible for our
own processing of any Personal Data).  You shall ensure that any Personal Data that you or the
individuals you provide or make available to us and/or to third party advisors we may engage on your
behalf in connection with the services provided in connection with this engagement ("Personal
Information") is provided in compliance with Data Protection Laws and any other data protection or
privacy laws that apply to you and you hereby agree to indemnify and hold us harmless against any third
party claims and liabilities, damages, losses, costs and expenses which arise from any failure to do so.

To the extent that you seek to defend or settle any claim in relation to Personal Information which we are,
or may in the future be, fully or partially responsible or liable for, under Data Protection Laws, you shall
keep us fully informed on a timely basis of such claim and shall take reasonable steps to mitigate the
liability to you and us in relation to such claim.

Our Privacy Policy, available at www.mwe.com, will apply to all Personal Information.  For the sake of
clarity, please do not hesitate to refer individuals whose Personal Information that you provide to us to
our Privacy Policy.

As an international law firm, we may transfer data internationally.  If your work is being handled by any
McDermott Will & Emery entity outside the United States, any Personal Information will also be handled
in accordance with the Privacy Policy and also the law which applies in the jurisdiction of that
McDermott Will & Emery entity.

Under Data Protection Laws and subject to any contrary legal or regulatory provisions, any individual or
other third party that is the subject of Personal Data, has the right to access, modify, limit, transfer or
delete the Personal Information, if any, and to object to the processing of Personal Information for any
legitimate and compelling reasons as described in the Privacy Policy.  We will comply with such request
in so far as we are able under the Data Protection Laws and other laws and binding regulatory guidance to
which we are subject.  All correspondence in relation to data protection, including any request to exercise
rights under the Data Protection Laws, should be in writing to your principal contact at the firm.

We may use the Personal Information that you provide to contact you or appropriate persons within your
organization about our legal services that may be of interest to you or your organization.  This may
include legal updates, seminars, and/or hospitality events.  If at any time you or any member of your
organization no longer wishes to receive this information directly from us, you or they should contact
your principal contact at the firm and we will make sure you no longer receive the information.

(Last Revised 5/2018)

**mwe.com**

Judy Mohr, Ph.D.
Partner
jmohr@mwe.com
+1 650 815 7630

June 12, 2020

R. Michael Williams, M.D., PhD
President
Immunogenetics, Inc.
5799 Turnberry Drive
Dublin, CA  95468

Re:     Engagement Letter for Intellectual Property Legal Services

Dear Dr. Williams:

Thank you for selecting McDermott Will & Emery LLP ("McDermott") to represent Immunogenetics, Inc. ("Immunogenetics" or the "Company") in connection with its patent preparation and prosecution matters and related intellectual property matters.  McDermott is a limited liability partnership registered in the State of Illinois.  The terms of our representation are set forth in this letter and in the Additional Terms of Engagement ("Additional Terms") that accompany this letter.

We understand the initial matter will be to prepare file and prosecute a provisional patent application. Judy Mohr, a patent law attorney in our Silicon Valley office, will be principally responsible for our services and serve as the primary contact with you in that matter. She will be assisted by Brett Schweers, a non-lawyer professional and patent agent, who will prepare the draft application, and Bhanu Sadasivan, a patent litigator who has expertise in T cells and can lend some scientific thinking to this project. I will have overall responsibility for the engagement and be available to you at any time to discuss any aspect of the engagement. As circumstances warrant, we may need to involve other attorneys with necessary expertise and junior associates and non-attorney professionals who are competent to perform certain tasks in a timely and cost-effective manner.

Our fees are based primarily on the time spent by and the hourly billing rates of each professional working on a matter, which rates may vary from one assignment to another based on considerations such as but not limited to the complexity and size of, and the time constraints imposed by circumstances relating to, such matter, as well as the skill and experience required to perform the services provided in connection with such matter. Judy Mohr's time will initially be billed at $1,060 per hour, Brett Schweers at $350 and Bhanu Sadasivan at $1005.  Our rates are reviewed at least annually and may be increased during the course of our representation.  In addition to our fees, we will bill for items of expense which we incur on behalf of the Company.  We submit invoices monthly, which are payable upon receipt.

**Conflicts of Interest**

In order to avoid misunderstandings concerning potential conflicts of interest, it is our policy to clarify the identity of our clients and the circumstances under which we may represent other clients with interests which are or may be adverse to the Company. Our client in this matter is the Company, and we will be representing its



R. Michael Williams, M.D., PhD
June 12, 2020
Page 2

interests and not those of any other entity or any individual, including, without limitation, any parent entities, subsidiaries, employees, officers, directors, shareholders, partners, members, entities in which you own an interest (even a substantial interest), any beneficiaries or other affiliates, or any individual inventors, including without limitation Dr. Edmond Yunis or you.

McDermott represents, and in the future will represent, many other clients. During the time we are working for the Company, one or more existing or future clients may ask McDermott to represent them in an actual or potential transaction or contested matter, including litigation or other dispute resolution proceedings, adverse to the Company's interests. By entering into this engagement, the Company agrees that McDermott can accept all such representations, even if the other client's interests are or may become directly adverse to the Company's interests, unless the matter is substantially related to a matter in which we are representing the Company, or will require disclosure of the Company's confidential information. (All such representations are referred to as "Permitted Representations".)  Company waives all actual and potential conflicts of interest that might exist because of any Permitted Representations undertaken by McDermott, and the Company will not assert that any engagement of McDermott in Permitted Representations is a basis to challenge or to disqualify McDermott from undertaking or continuing any Permitted Representation.

## Miscellaneous

It is important that all information provided to us is complete, accurate and up to date so that we can represent the Company's interests fully. Accordingly, please ensure that we are notified of any changes or variations to that information which may arise after the date it is provided to us, as well as any new circumstances which might be relevant to the work we are undertaking for Immunogenetics.

Unless we are otherwise instructed by you in writing at or prior to the completion of this matter, we will, after a reasonable period of time has passed, at our discretion, dispose of documents (hard copies, electronic and any other media) and other materials that remain in our possession relating to a matter for which our services have been completed or terminated.

When we complete the services we have been retained to perform, our attorney-client relationship will be terminated. If  the Company later retains us to perform further or additional services, our attorney-client relationship will be revived subject to these terms of engagement unless we mutually agree in writing to change the terms at that time.

You have the right to consult with other counsel concerning the terms of this engagement letter. By executing this engagement letter, the Company is confirming that it understands and accepts all of the terms set forth in this letter and in the Additional Terms and that you have signed this letter voluntarily on behalf of the Company and with the benefit of the information necessary to make a fully informed decision to agree to these terms.  The Company intends for its consent to be effective and fully enforceable and to be relied upon by McDermott in accepting the representation. These terms may not be modified unilaterally and any amendment or modification of these terms will be effective only upon execution of a writing signed by you or by another person authorized to approve such changes for the Company and by a person authorized to sign on McDermott's behalf.

*   *   *



R. Michael Williams, M.D., PhD
June 12, 2020
Page 3

If you have questions concerning any of the information presented in this letter or the Additional Terms, or should you have a concern or question at any time during our engagement on any matters, please do not hesitate to call me.

If the letter and Additional Terms are acceptable, please sign and date this letter in the space provided below. Please note that your request that McDermott proceed, or your acquiescence in McDermott proceeding, will constitute your full acceptance of the terms set forth herein and in the attached.

Thank you again for the opportunity to be of service to you on this important matter for Immunogenetics.

Sincerely,

*Bernadette*

Bernadette M. Broccolo


**AGREED AND ACCEPTED:**


**By** _____          _____
      **R. Michael Williams, M.D., PhD**                    **Date**



# ADDITIONAL TERMS

*This document sets forth McDermott Will & Emery LLP's additional standard terms of engagement for providing legal services.  These terms are an integral part of our agreement with you.  You should review this document carefully and retain it for your files.  If you have any questions, please contact us promptly.*

**OUR SERVICES TO YOU** ~ In our engagement letter with you, we specify the matter in which we will be representing you.  It is important that you have a clear understanding of the legal services we will provide.  If at any time you have questions regarding the scope of our services, please communicate with your principal contact at the Firm.

We will represent you zealously and act on your behalf to the best of our ability.  Whenever we provide you with an expression regarding the potential outcome of your matter, we will use our best professional judgment.  However, we cannot guarantee the outcome of any matter.  Any expression of our professional judgment regarding your matter or the potential outcome is limited by our knowledge of the facts and based on the law at the time.  It is also subject to any unknown or uncertain factors or conditions beyond our control.

**WHO IS OUR CLIENT?** ~ It is our policy to represent only the person or entity identified in our engagement letter.  Unless specifically stated to the contrary in that letter, our representation of you does not extend to any of your affiliates.

For example, if you are a corporation, our representation does not include any of your parents, subsidiaries, employees, officers, directors, shareholders, or any entities in which you own an interest (even a substantial interest).  If you are a partnership, our representation does not extend to the individual partners of the partnership.  If you are a trade association, our representation excludes members of the trade association. If you are an individual, our representation does not include your spouse, siblings, or other family members, successors in interest, or any entities in which you own an interest (even a substantial interest).  If you are a trustee or other fiduciary, our representation does not include beneficiaries or other persons to whom you owe a duty.

When we deal with a representative or agent of an entity, we represent only the entity and not the representative or agent.

The advice and communications which we render on your behalf are not intended to be disseminated to or relied upon by any other parties without our written consent.  We sometimes include a specific disclaimer in correspondence or other work product to this effect, but the absence of such a disclaimer does not create an exception or otherwise entitle others to rely on our work or advice.

**FEE ESTIMATES** ~ Clients frequently ask us to estimate the total fees and other charges they are likely to incur in connection with a particular matter.  We are pleased to respond to such requests whenever possible with an estimate based on our professional judgment.  This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.  The ultimate cost frequently is more or less than the amount estimated.

**OTHER CHARGES** ~ As an adjunct to providing legal services, we may incur and pay a variety of charges on your behalf or charge for certain ancillary support services.  When we incur such charges on your behalf or charge for such ancillary support services, we will include them in our billing statements.  These charges may include, among other things, telephone, messenger, courier, express delivery services, facsimile communications (which typically include a per page charge in addition to the cost of the telephone usage), document printing, reproduction, scanning and imaging, data storage and processing (which typically include per gigabyte charges based on the volume of data), filing fees, deposition and transcript fees, witness fees, travel expenses, computer research, and charges by outside experts and consultants. Certain of these services, particularly those that involve significant technology and/or support services such as imaging and storing electronic data and documents and the use of specialized software for legal research and data processing, may be provided by McDermott at a profit.

It is our general policy to arrange for outside providers of services (such as the fees of outside consultants, expert witnesses and court reporters) to bill you directly.  You agree to pay those bills promptly and to provide us notice that such payment has been made.

**BILLING ARRANGEMENTS, TERMS OF PAYMENT AND RETAINERS** ~ We will bill you on a regular basis—normally, each month—for both fees and other charges.  You agree to make payment upon receipt of our statement.

Sometimes we ask for an advance retainer which will be credited towards your legal fees and expenses on a monthly basis, unless we agree to a different arrangement. If the retainer proves insufficient to cover current fees and other charges on a regular basis, we may ask you to replenish or increase it, and you agree to do so if asked.

Should your account become delinquent and satisfactory payment terms are not arranged, we may withdraw, or seek to withdraw, from the representation consistent with the applicable rules and pursue collection of the amounts owed.  You will remain responsible for payment of our legal fees rendered and charges incurred prior to such withdrawal.

We look to you, the client, for payment regardless of whether you are insured to cover the particular risk or have the right to be reimbursed from someone else.  You are responsible to pay us in accordance with the terms agreed to in this engagement, even if you engage us to collect or seek reimbursement from an insurer or other third party pursuant to contracts, statutes or insurance policies.

**TERMINATION** ~ You may terminate our representation at any time, with or without cause, by notifying us, and subject to court approval when required for matters in litigation.  We will return your papers and other property to you promptly upon receipt of your request for those materials unless they are subject to a lien under applicable law.  We will retain our own files pertaining to the matter or case, including our drafts, notes, internal memos, and work product.  Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

We have the right to withdraw from our representation of you if, among other things, you fail to honor the terms of our engagement letter and/or the Additional Terms, you fail to make payment of any of our statements in a timely manner, you fail to cooperate or to follow our advice on a material matter, or any fact or circumstance occurs that would, in our view, render our continuing representation unlawful or unethical, or we determine that we are otherwise permitted under applicable law and rules to withdraw from the representation.  If we elect to withdraw, you will take all steps necessary to free us of any

obligation to perform further services, including the execution of any documents necessary to complete our withdrawal. Notwithstanding such termination, you will remain obligated to pay us for all services provided and to reimburse us for all costs and expenses paid or incurred on your behalf, including those required for the orderly transition of the engagement.

Our representation of you will be considered terminated at the earlier of (a) your termination of our representation and the completion of any work that may be required incidental to withdrawal from an ongoing matter, such as work that is appropriate to accomplish an orderly transition to other counsel, work required to obtain permission to withdraw from a court or other tribunal, and work that is required to be performed prior to the time that such permission is granted, (b) our withdrawal from our representation of you or (c) the completion of our work for you. In addition, in the event there has been no work performed by us on your behalf for six consecutive months, and no more work is contemplated, our attorney-client relationship will have been terminated.

**PRIVILEGE** ~ Our communications to and from you, including billing statements, may include attorney client privileged information or attorney work product. You should take reasonable steps to protect them from disclosure to third parties so as to maintain those privileges and protections.

**McDERMOTT'S PRIVILEGE** ~ From time to time, issues may arise that raise questions as to our duties to you. We believe that it is in our clients' interest, as well as McDermott's interest, that in the event legal ethics or related issues arise during a representation, we receive experienced legal advice concerning our obligations. Accordingly, you agree that if we determine in our sole discretion during the course of the representation that it is necessary or appropriate to consult with McDermott lawyers designated to render legal advice to McDermott and its lawyers or to consult with outside lawyers, we have your consent to do so and any communications among lawyers working on the matter and McDermott lawyers or outside lawyers designated to render legal advice to McDermott and its lawyers will be privileged.

**SECURE COMMUNICATIONS** ~ Our email server is configured to encrypt emails if your email system supports it. We recommend that encryption be used to protect communications with us that include confidential information. You should discuss with your principal contact at the Firm any special measures that you require regarding email encryption. In addition, the Firm has available solutions to facilitate our collaboration and document sharing with you that we can discuss with you when appropriate. If you prefer to use a solution other than those provided by the Firm, we recommend that you carefully assess the data security offered by that solution. We discourage you from using text, instant messaging or similar programs to communicate with us. These forms of communication may not be encrypted and may be vulnerable to interception.

**ANTI-BRIBERY AND ANTI-CORRUPTION** ~ We do not engage in bribery or corruption of any kind, and do not tolerate bribery or corruption by others to further the goals and objectives of our representations. We reserve the right to terminate our engagement if we learn of such improper conduct.

**EUROPEAN UNION DATA PROTECTION** ~ In providing legal services in the United States, we may receive from you data which relates to an identified or identifiable individual in the European Union ("Personal Data"). To the extent applicable to us, we will comply with the provisions of the General Data Protection Regulation (EU) 2016/679 as well as any implementing, amending or supplemental regulation under Member State data protection laws ("Data Protection Laws") as an independent data controller (i.e. as between you and us, we will each separately be responsible for our own processing of any Personal Data). You shall ensure that any Personal Data that you or the

individuals you provide or make available to us and/or to third party advisors we may engage on your behalf in connection with the services provided in connection with this engagement ("Personal Information") is provided in compliance with Data Protection Laws and any other data protection or privacy laws that apply to you.

To the extent that you seek to defend or settle any claim in relation to Personal Information which we are, or may in the future be, fully or partially responsible or liable for, under Data Protection Laws, you shall keep us fully informed on a timely basis of such claim and shall take reasonable steps to mitigate the liability to you and us in relation to such claim.

Our Privacy Policy, available at www.mwe.com, will apply to all Personal Information.  For the sake of clarity, please do not hesitate to refer individuals whose Personal Information that you provide to us to our Privacy Policy.

As an international law firm, we may transfer data internationally.  If your work is being handled by any McDermott Will & Emery entity outside the United States, any Personal Information will also be handled in accordance with the Privacy Policy and also the law which applies in the jurisdiction of that McDermott Will & Emery entity.

Under Data Protection Laws and subject to any contrary legal or regulatory provisions, any individual or other third party that is the subject of Personal Data, has the right to access, modify, limit, transfer or delete the Personal Information, if any, and to object to the processing of Personal Information for any legitimate and compelling reasons as described in the Privacy Policy.  We will comply with such request in so far as we are able under the Data Protection Laws and other laws and binding regulatory guidance to which we are subject.  All correspondence in relation to data protection, including any request to exercise rights under the Data Protection Laws, should be in writing to your principal contact at the firm.

We may use the Personal Information that you provide to contact you or appropriate persons within your organization about our legal services that may be of interest to you or your organization.  This may include legal updates, seminars, and/or hospitality events.  If at any time you or any member of your organization no longer wishes to receive this information directly from us, you or they should contact your principal contact at the firm and we will make sure you no longer receive the information.

(Last Revised 8/2018)

DM_US 169332429-1.108899.0011

*McDermott Will & Emery LLP/7*