JAMES M. BRADEN (SBN 102397)
LAW OFFICES OF JAMES M. BRADEN
601 MONTGOMERY STREET, SUITE 315
SAN FRANCISCO, CA 94111

TELEPHONE: (415) 398-6865
FACSIMILE: (415) 788-5605
EMAIL: braden@sf-lawyer.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| R. MICHAEL WILLIAMS, an individual, and IMMUNOGENETICS.COM, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>BERNADETTE BROCCOLO, an individual,<br><br>Defendants. | Case No. 21-cv-04731 – MMC<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S REQUEST FOR DISCOVERY TELEPHONIC CONFERENCE**<br><br>Magistrate Judge: Hon. Sallie Kim<br><br>Complaint filed June 21, 2021<br>First Amended Complaint Filed Nov. 9, 2021 |

I, James Braden, declare as follows:

1. I am the attorney for Plaintiffs in this matter. I have personal knowledge of the matters contained in this Declaration and, if called as a witness, could and would testify to them as follows.

1

2. Defendant's attorney, Mr. Fields, claims to have submitted his Declaration pursuant to Judge Kim's Standing Order. He complains that we violated that Standing Order by refusing without good reason to give him our portion of the joint discovery letter brief as that Order requires.

3. Mr. Fields' claim is false. What I told him very clearly, and asked him to convey correctly to Judge Kim if he went ahead unilaterally with a filing, which I asked him not to do, is that he had not prepared his own draft of the Letter Brief in the proper format Judge Kim's Order requires. Here is the relevant text of the Standing Order:

> With respect to each issue relating to the unresolved dispute, a detailed summary of each party's final substantive position and their final proposed compromise on each issue, including relevant legal authority. **This process allows a side-by-side, stand-alone analysis of each disputed issue.**

(Emphasis added.)

4. I believe the reasonable interpretation of this language is that the Letter Brief should present each distinct discovery issue separately under its own heading, with the parties' respective positions stated as to that issue, and then on to the next issue, and then the next. Defendant, however, drafted the Letter Brief to state all their issues and positions mingled together in one section, and then demanded that we do exactly the same mingling in our own section. Thus there was not and could not be any "side-by-side, stand-alone analysis of each disputed issue."

5. I told Mr. Fields that was contrary to the natural reading of the Standing Order language quoted above, and that I had no obligation to participate in preparation of an improper Joint Letter. I told him that all he had to do was re-format the letter and I would participate.

6. Mr. Fields never refuted or even disagreed with my point. Rather, he simply ignored it. It became clear with his filing today that his agenda is not genuine good faith resolution of a discovery dispute, but forcing a confrontation before Judge Kim that he for whatever reason imagines to be in his client's interest. That venture inherently is in bad faith.

7. Mr. Fields' bad faith is emphasized and increased by his repeated false characterizations of the positions that I and my client have stated in the extensive meet-and-confer process to date. Although Fields' Paragraph 5 purports to inform the Court as I reasonably asked and is surely required in any event as to why I would not join his Letter Brief, he did not actually explain why. That would have required him to explain my view that his presentation violated Judge Kim's Standing Order, as I set forth above. Indeed, Fields contrives to give the false impression that my objection was some kind of mere technical one of "literal formatting", rather than one of substance.

8. Mr. Fields could have simply revised his draft Joint Letter to make the correction I asked for. It would not have been that hard. But Fields' eagerness to take this immediately to Judge Kim reveals that his real agenda is confrontation and a big fight, not actual resolution of the discovery issues.

9. Even worse is that Fields' draft of his portion of the Letter Brief does not accurately or fairly state, as of course is required, what our own current positions are. Either Fields omits altogether what we said during the extensive meet-and-confer so far, or he recites a

CASE NO. 4:21-cv-04731
PLAINTIFFS' RESPONSE TO DEFENDANT'S
REQUEST FOR TELEPHONIC DISCOVERY CONFERENCE

position that we took earlier in the process, but eventually superseded, i.e. he does not fairly give our latest position as Judge Kim's Standing Order explicitly requires.

10. Mr. Fields sent his improperly prepared portion of the Joint Letter at 4:00 PM yesterday, Tuesday, August 2, and peremptorily demanded that we prepare our portion to fit into his format by this morning. He later "graciously" extended that demand time to 4:00 PM today. Both were unreasonably short amounts of time.

11. But we considered the actual meet-and-confer to be an ongoing process, which is continuing even now. Substantive progress on dates was made as recently as this morning and more may be possible if Fields will engage with us.

12. Mr. Fields actualy is refusing to cooperate with me and my client, not the other way around. Ellen Williams wrote a detailed statement this afternoon, expanding upon a similar statement she wrote yesterday, which explains in detail why she and Michael Williams have valid particular concerns about COVID that entitle them to avoid in-person deposition. She also explains why the depositions should start at 11:00 AM rather than 9:30 AM. I sent both yesterday's and today's statements to Fields, but he has ignored them.

13. I attach Ellen Williams' unanswered statement of today. It makes a compelling case for depositions by Zoom remote, and for starting at 11:00 AM.

14. The true situation, up to the minute current, is briefly as follows.

15. Defendants did nothing whatsoever about taking the depositions of Ellen and Michael Williams, or anyone else, from when this lawsuit was served way back in September 2021up until nearly the end of July 2022 after Settlement Conference with Judge Ryu failed to resolve the case. In other words, for almost a full year Defendants failed to lift even a finger to

4

depose my clients! Since the point in late July when they finally bestirred themselves to do so, they have repeatedly invoked a fake sense of urgency and crisis, for a situation that was entirely of their own making. They repeatedly proclaim that there is only a month, just a mere month, before the August 29 discovery cut-off, as though they imagine that fact actually helps them shift the blame to us for their own dereliction for nearly a year.

16. So Defendants, through Fields, went into scramble mode to arrange the depositions they had neglected for nearly a year.. They issued notices for Michael Williams to be deposed on August 8 and Ellen Williams on August 19. When I gave the not uncommon response to such first unilateral date designation that those were not convenient and asked for accommodation, I got nothing but argument, peremptory demands, and generally inappropriate and unprofessional conduct.

17. Neither August 8 nor August 15 is convenient for Dr. Williams. August 22 is convenient. We have agreed for him to be deposed on that date. A date two weeks after the unilaterally noticed date is presumptively reasonable. But Defendants claim this is unreasonable and that they must have August 15. That is a ridiculous demand that is backed by no reason or actual argument at all..

18. Similarly, we agreed that Ellen Williams could be deposed on August 23. But Defendants said they should not have to depose her the next day after deposing Michael Williams. That also is a ridiculous position, which Fields declined my request to defend. We also offered to produce Ellen Williams for PMK deposition later in the same week, i.e. on August 24 or 25, although not on the 26th. We have not yet received a response to that offer.

19. We also suggested that the problem of Defendants scrambling in the last month to escape their own self-inflicted scheduling urgency crisis could be alleviated by simply extending the August 29 discovery cut-off date, either by 30 days just for facdt discovery, or by 90 days for the entire case schedule. But Defendants adamantly refused that simple solution, again because they manifestly prefer conflict before Judge Kim over this rather than obtaining practical solutions.

20. Defendants and Fields say that if dates can be agreed, they should be memorialized in a Stipulation and Order signed by Judge Kim that gives them some enforcement security on those dates.. I told Fields more than once that is a reasonable request and that we agree to it. But he has failed and refused to include my agreement in his bad faith presentation today to the Court.

21. The attached Statement by Ellen Williams makes a strong case against her and her husband being required to travel to the Duane Morris office in San Francisco for in-person depositions. None of the cases cited by Defendants in their draft portion of the Joint Letter reach or cover those facts. Moreover, some of Defendant's cases do not involve COVID issues at all, pertaining more to whether a Plaintiff should have to travel to a distant location.

22. And even the cases that do pertain to COVID are not fairly described by Defendants, although the cases themselves are admirably fair. For example, although the Court in Welsh v. Safeco Ins. Co. of America did rule that the two doctors over age 60 had to appear in person, the Court noted that many other courts had found, to the contrary, that Zoom video was a reasonable substitute on the facts of those cases:

> Other courts have held otherwise, finding a videoconference deposition appropriate due to COVID-19 concerns. See Reynard v. Washburn Univ. of

*Topeka*, 2020 WL 3791876, at *4 (D. Kan. July 7, 2020) (ordering remote depositions due to the plaintiff's "age and health risks, along with her husband's"); *Manley v. Bellendir*, 2020 WL 2766508, at *3 (D. Kan. May 28, 2020) (ordering the defendant to attend the plaintiff's deposition remotely to reduce COVID-19 risks); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166, at *5 (N.D. Ill. June 25, 2020) (noting "[c]ourts are beginning to recognize that a 'new normal' has taken hold throughout the country in the wake of the COVID-19 pandemic that may necessitate the taking of remote depositions unless litigation is going to come to an indefinite halt until there is a cure or a vaccine for COVID-19."); *Learning Res., Inc. v. Playgo Toys Enterprises Ltd.*, 2020 WL 3250723, at *2–3 (N.D. Ill. June 16, 2020) (finding "[t]he general concern over the risks posed by COVID-19 are heightened" where lead counsel and members of his family were in a high-risk category).

23. The reality is that past cases go in both directions, and none of them clearly resolves the COVID situation in our case. Ellen Williams' statement demonstrates that she and Michael Williams have special and compelling COVID concerns and that those concerns cannot reasonably be assuage4d by Defendants offer of a conference room where people are wearing masks and standing apart, but which do not provide for the special and extraordinary cleaning and masking precautions that Doctor and his wife diligently maintain at the Doctor's medical office.

24. Again, what's crucial here is that Defendants have not tried to answer the Ellen Williams statement about these COVID issues, but have instead rushed too quickly and peremptorily to set up a big fight before Judge Kim.

25. We respectfully request that before Judge Kim reaches any decision to order that Ellen and Michael Williams appear in person despite Ellen's expressed COVID concerns, Judge Kim should conduct a Zoom hearing at which both Ellen and Michael can appear and elaborate

on their COVID concerns, and answer any questions that Judge Kim, or indeed the Defendants themselves, may wish to pose.

26. Defendants' complaints about the Williams past issues with Zoom appearances is are misleading even assuming arguendo that some of them have some "technical" accuracy. Whatever the past issues, we have indeed agreed, as Defendant grudgingly recites, to accept every "parameter" condition except one that is inappropriate and not involved in past conduct, which is that and my clients be physically in the same room with one another.

27. That is unworkable, unreasonable, and unfair. Neither my office nor my clients' office is set up to have separate computers in the same room that would enable us to be in the same room and still be on Zoom together. Moreover, the mandatory in-person contact between me and the clients in that room is contrary to the points Ellen Williams has made about the COVID issues involved in such same-room contacts.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true, correct, and complete, and that this Declaration was executed this 3rd day of August 2022, in San Francisco, California.

                                        __/s/ James Braden__

                                        JAMES BRADEN

**ELLEN WILLIAMS STATEMENT BEGINS ON NEXT PAGE.**

## ELLEN WILLIAMS STATEMENT ON COVID AND DEPOSITION START-TIME

**From:** Ellen Elsay
**Sent:** Wednesday, August 3, 2022 3:52 PM
**To:** James Braden
**Subject:** Re: Williams, et al. v. Broccolo - deposition scheduling

You can forward to the defense:

Defendants at the last minute want to take depositions when they could have taken the depositions in March, April, May, June and early July. They noticed deposition for the first time at the end of July knowing discovery cut off is August 29. Plaintiff's attorney proposed to move the discovery cut off date by 1-3 months but Defendants refused.

Contrary to the defense attorney's claim, during the Court Settlement Conference with Judge Ryu, Plaintiff Williams was wearing a clear mask and shield and both his wife and his assistant were wearing masks. And they were far away from Plaintiff and the room was being sanitized utilizing sterile technique every 5 minutes.

Plaintiff will not be able to attend in-person deposition because he cannot be exposed to COVID-19 regardless of what variant it is.. This is because Plaintiff has multiple risk factors for death, including, but not limited to, Stage IV prostate cancer, under chemotherapy treatment, genetics that makes him highly susceptible to autoimmunity and he is immunocompromised, meaning that his immune system's defense is low to fight infection and/or virus. If he catches COVID-19, based on the foregoing, he is guaranteed to die.

Similarly, if he were to be given COVID-19 treatment such as Remdesivir, he will die of instant cardiac arrest. It should be noted that in 2019, 2020, 2021, he had more patients who died of

CASE NO. 4:21-cv-04731
PLAINTIFFS' RESPONSE TO DEFENDANT'S
REQUEST FOR TELEPHONIC DISCOVERY CONFERENCE

COVID than cancer. This year, the statistics have not changed, more patients of his died of COVID than cancer ages ranging 25 -85.

Since COVID-19, Plaintiff has not gone anywhere except to work three days a week, and he works from home via Zoom two days a week. At work, he wears N-100 mask, shield, protective gown, gloves and is protected by additional glass between Plaintiff and patients and the room is sanitized every 5 minutes utilizing sterile technique. Everyone is tested for COVID-19 before they see him. He ONLY sees patients that must be seen and everyone else is being seen by Zoom. Furthermore, when he is wearing the N-100 mask and shield, he can hardly breath and it is hard to hear him, and he will have to take breaks numerous times.

In November 2019, Plaintiff had angiogram done without consent by a blind cardiologist where Plaintiff's femoral artery was punctured and he lost 9 units of blood with 17 inches of hematoma and where his right leg nerves were permanently damaged due to the blind cardiologist puncturing his nerves multiple times. As a result, he cannot sit still and has to move to avoid pulmonary embolism and this is due to the punctured femoral artery where he already had pulmonary embolism and almost died.

The wife, Ellen Williams, cannot be deposed in person because she is predisposed to autoimmune disease from severe sickle cell anemia. She also has severe asthma. If she were to catch COVID-19, not only is there a high risk that she would spread it to Plaintiff, but she too will die.

Most people in San Francisco do not wear mask and based on CDC report dated July 28, 2022, COVID-19 is still very high in San Francisco. It would not be prudent to expose Plaintiff and his

10

CASE NO. 4:21-cv-04731
PLAINTIFFS' RESPONSE TO DEFENDANT'S
REQUEST FOR TELEPHONIC DISCOVERY CONFERENCE

wife to death when Zoom deposition can produce the same result, and in fact, much better result because there will not be frequent breaks and sterilization required. COVID-19 can be caught from the air and surfaces and defendant and her attorneys have no way of sterilizing the air and the surfaces of their office, let alone their office building and the streets of San Francisco.

Because of Plaintiff's leg damage, he also requires special transportation, with at least two people to help him. Because his leg damage is extensive, it requires a lot of hours and help to assist him.

Defendants demand that the deposition must start at 9:00 a.m. Plaintiff cannot start before 11 a.m. because he has physical therapy at home from 9:00 a.m. to 10:30 a.m. which is very essential to prevent further blood clot and damage to his leg. This schedule cannot be changed because his physical therapist has her own clinic and patients and she will have to cancel all of her patients in order to change the schedule, which is not possible. She comes home to do physical therapy to accommodate Plaintiff.

Plaintiff's wife cannot be deposed before 11:00 a.m. on August 23, 2022, because she has to help Plaintiff to get ready for work and take him to work as his right leg has substantial nerve damage and gives out frequently.